IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MORGAN JONES, | ) | Case No. 08-217 |
| | ) | |
| Defendant. | ) | Electronically Filed |

DEFENDANT, MORGAN JONES',
MEMORANDUM IN AID OF SENTENCING

AND NOW comes Defendant, Morgan Jones, by and through his attorney, Martin A. Dietz,

Esquire, and respectfully submits the within memorandum in aid of sentencing as follows:

Defendant, Morgan Jones' (hereinafter "Mr. Jones"), Position With Respect To Sentencing

Factors has previously been filed with this Court and is incorporated herein as if fully set forth.

Likewise, Mr. Jones adopts the information contained in the Presentence Investigation Report.  At

this time, Mr. Jones wishes to bring certain additional issues to the Court's attention prior to

sentencing to aid in the Court's invocation of its sentencing discretion.

Beginning the overhaul of the post-1987 federal sentencing scheme, on January 12, 2005,

the Supreme Court, in United States v. Booker, 543 U.S. 220(2005), ruled that its Sixth

Amendment holdings in Blakely v. Washington, 542 U.S. 296 (2004) and Apprendi v. New

Jersey, 530 U.S. 466 (2000) applied to the Federal Sentencing Guidelines.   The Booker Court

further found those provisions of the federal Sentencing Reform Act of 1984 that make the

Guidelines mandatory, 18 U.S.C. §3553(b)(1) and the provisions which rely upon the

Guidelines' mandatory nature, 18 U.S.C. §3742(e), incompatible with its Sixth Amendment holding outlawing judicial fact-finding in a mandatory determinate sentencing scheme.  <u>Booker</u>, 543 U.S. at 237.  Accordingly, the Court severed and excised those provisions, and made the Guidelines "advisory", a description designed to increase the discretion of a sentencing judge. <u>Id.</u> at 258-259.   Under <u>Booker</u>, sentencing courts were advised to treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a).  543 U.S. at 261-262.  Under <u>Booker</u>, a sentence was now deemed legal if it was "reasonable". 543 U.S. at 260.

Furthering the trend started by the Court in <u>Booker</u>, the Supreme Court restored the tremendous discretion that sentencing courts possessed prior to the promulgation of the sentencing guidelines. <u>Gall v. United States</u>, 522 U.S. 38, 128 S.Ct.586 (2007), Largely as a result of the Supreme Court's more recent sentencing pronouncements in <u>Gall</u> and <u>Kimbrough v. United States</u>, 522 U.S. 85, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened." <u>United States v. Moon</u>, 513 F.3d 527, 544 (6th Cir. 2008), quoting <u>Gall</u>, 128 S.Ct. at 602.  District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines and, importantly, sentencing courts are not required to even presume that the guidelines provide an appropriate sentence in a given case.

The Supreme Court has explained that the "reasonableness" of a sentence is the controlling query and it further held that any sentence imposed on a defendant, whether below, above or within the sentencing guidelines, is to be reviewed "under a deferential abuse-of-

discretion standard." <u>Gall</u>, 128 S.Ct. at 598.   As set forth in <u>United States v. Russell</u>, 564 F.3d 200, 203 (3rd Cir. 2009), appellate courts must first

> ensure that the district court committed no significant procedural error  in arriving at its decision[.] <u>United States v. Wise</u>, 515 F.3d 207, 217 (3rd cir. 2008).  Second, "[i]f we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence[.]" <u>Id</u>. at 218.  With respect to the first inquiry, a district court commits significant procedural error by, *inter alia*, failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.] <u>Gall v. United States</u>, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L. Ed. 2d 445 (2007), quoted in <u>Wise</u>, 515 F.3d at 217.

If there is no procedural error, an appellate court must "then, at stage two, consider its substantive reasonableness." <u>United States v. Tomko</u>, 562 F.3d 558, 567 (3rd cir. 2009) citing <u>Levinson</u>, 543 F.3d at 195.   Substantive review focuses not on one or two factors, but on the totality of the circumstances. <u>Id</u>. citing <u>Gall</u>, 128 S. Ct. at 597; <u>United States v. Howe</u>, 543 F.3d 128, 137 (3d Cir. 2008).

The United States Supreme Court has set forth a principled framework to guide federal sentencing.   Citing <u>Rita v. United States</u>, 551 U.S. 338, 127 S.Ct. 2456, 169 L.Ed.2d 203 (2007), the <u>Gall</u> Court explained that a sentencing court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range".   128 S.Ct. at 596.  See also <u>Kimbrough,</u> supra.   The Third Circuit has recognized this stricture.  <u>United States v. Smalley</u>, 517 F.3d 208, 211 (3rd Cir. 2008). In <u>Gall</u>, noting that the sentencing guidelines should only be the "starting point" and the "initial benchmark" of a sentencing proceeding, the Court noted that the Guidelines are not the only consideration.   <u>Id</u>.   Next, "after giving both parties an opportunity to

3

argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party."   128 S.Ct. at 596.   In doing so, however, a sentencing court is not permitted to presume that the Guidelines range is reasonable. 128 S.Ct. at 596-597.    The sentencing judge "must make an individualized assessment based on the facts presented" at sentencing.  128 S.Ct. at 597.    If the sentencing judge decides that a sentence outside the applicable Guideline range is justified, the sentencing judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.   Id.    Continuing on, the Gall Court explained that a sentencing court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.  Id.; see Wise, 517 F.3d at 215-216 (reiterating Gall sentencing analysis).


Prior to the Supreme Court's decision in Gall, the Third Circuit Court of Appeals had provided an analytical framework to be followed in complying with the Supreme Court's Booker jurisprudence requiring the imposition of a "reasonable" sentence on a defendant. See United States v. Grier, 475 F.3d 556 (3rd Cir. 2007); United States v. Cooper, 437 F.3d 324, 329-32 (3rd Cir. 2006); United States v. King, 454 F.3d 187, 194 (3rd Cir. 2006).    In United States v. Gunter, 462 F.3d 237, 246 (3rd Cir. 2006), the Third Circuit interpreted Booker to require a district court to comply with the following three steps:


(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;

(2) In doing so, they must formally rule on the motions of both

4

> parties and state on the record whether they are granting a
> departure and how that departure affects the Guidelines
> calculation, and take into account the Third Circuit's pre-<u>Booker</u>
> caselaw, which continues to have advisory force; and
>
> (3) Finally, district courts are required to exercise their discretion
> by considering the relevant § 3553(a) factors in setting the
> sentence they impose regardless whether it varies from the
> sentence.

See also <u>Tomko</u>, 562 F.3d at 567; <u>United States v. Levinson</u>, 543 F.3d 190, 194-195 (3rd Cir. 2008); <u>United States v. Charles</u>, 467 F.3d 828, 830-31 (3rd Cir. 2006); <u>United States v. Jackson</u>, 467 F.3d 834, 837 (3rd Cir. 2006).

These three factors, while not identical, are consistent with the considerations enunciated in <u>Gall</u> and continue to guide sentencing courts within the Third Circuit. <u>Smalley</u>, 517 F.3d at 215; <u>Wise</u>, 517 F.3d at 216.

Notwithstanding the decreased rigidity of the sentencing guidelines, the first step in determining a federal defendant's sentence requires a sentencing court to consider the federal sentencing guidelines because, in fact, they are a product of Congressional action. <u>United States v. Langford</u>, 516 F.3d 205, 214 (3rd Cir. 2008) citing <u>United States v. Goff</u>, 501 F.3d 250, 257 (3rd Cir. 2007); <u>Cooper</u>, supra. A sentencing court's failure to correctly calculate the correct guideline range "thwarts" reasonableness review and taints the remaining sentencing analysis. <u>United States v. Ali</u>, 516 F.3d 205, 214 (3rd Cir. 2008). A sentencing court must correctly calculate the correct offense level, criminal history category, enhancements and sentencing range. <u>Langford</u>, 516 F.3d at 213.

After calculating the appropriate sentencing guidelines range, a sentencing court should also consider any motions for departure. Such a motion is distinct from a request for a "variance" from a sentencing guideline range.  See United States v. Vampire Nation, 451 F.3d 189, 195 (3rd Cir. 2006)(A departure is based on the sentencing guidelines. A variance is based on consideration of the §3553(a) factors).  See also Gunter, 462 F.3d at 247, n. 10.

In Kimbrough, the Supreme Court explained that a sentencing court's decision to adopt an offense level outside of the guidelines is permissible

> when the sentencing judge finds a particular case 'outside the heartland' to which the Commission intends individual Guidelines to apply.  Rita, 551 U.S.at 2461.

128 S.Ct.at 575.

The "heartland" to which the Kimbrough Court alluded, is specifically described in the Guidelines:

> [t]he Commission intends the sentencing courts to treat each guideline as carving out a "heartland", a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. . . .

See United States Sentencing Guidelines, Chapter 1, Part A 4(b); United States v. Baird, 109 F.3d 856 (3rd Cir. 1997); see also United States v. Ali, 508 F.3d 136, 147-148 (3rd Cir. 2008)

In Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), a decision rendered long before Blakely, Booker, Gall and their progeny, the United States Supreme Court

6

affirmed the Sentencing Commission's position with respect to the "heartland" policy announced in United States Sentencing Guidelines, Chapter 1, Part A 4(b).  Most importantly, the Court, in overruling the Ninth Circuit Court of Appeals, held that the decision of a District Court to depart from the sentencing guidelines should be overturned only where the sentencing court abuses its discretion.  Koon, 116 S.Ct. at 2043.   In fact, the decision of a sentencing court to depart from the sentencing guidelines shall be given "substantial deference, for it embodies the traditional exercise of discretion by a sentencing court".  Id. at 2046; see also United States v. Sally, 116 F.3d 76 (3rd Cir. 1997).  Such deference is proper because "District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do".  Koon, 116 S.Ct. at 2047.  As recognized by the Supreme Court, the Sentencing Commission's less than rigid approach exists because "it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision".  Id. at 2044; see also U.S.S.G. Chapter 1, Pt. A, intro. comment 4(b).

Moreover, even when circumstances or factors which are viewed in isolation do not warrant a departure, a sentencing court may still depart when the circumstances or factors, in combination, "prove to be so exceptional as to provide a basis for departure." United States v. Hancock, 95. F.Supp. 280, 288 (E.D.Pa. 2000) citing United States v. Evans, 49 F.3d 109, 114 (3rd Cir. 1995); See Comment to U.S.S.G. §5K2.0.   Finally, "[t]he decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis". Koon, 518 U.S. at 98.

As set forth above, the Third Circuit, in Gunter and its progeny, has advised that  after calculating the appropriate advisory sentencing guideline range, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence it

imposes regardless of whether it varies from the sentence calculated under the Guidelines.  462 F.3d at 246.   Despite a sentencing court's mandate to correctly calculate the advisory guideline range, the directives of recent sentencing jurisprudence make clear that courts may no longer uncritically apply the guidelines.  In fact, as set forth above, a sentence within the advisory guidelines is not presumptively reasonable.   Such an approach would be contrary to the holdings Gall and the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the §3353(a) factors, many of which the guidelines either reject or ignore.

As explained by the Third Circuit Court of Appeals in Grier:

> [u]nder an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error.  **The only change in the equation is that, at the end of the day, the district court is not bound by the recommended Guidelines range, but must impose a sentence based on all the factors articulated in §3553(a)**.  The court of appeals must then decide whether that final sentence is 'reasonable' (emphasis supplied).

Grier, 475 F.3d at 561.

In evaluating a sentencing court's factual findings, the Supreme Court has noted that a sentencing judge's firsthand experience with a particular case places the sentencing judge in a better position to evaluate the facts relative to sentencing.  In Kimbrough, the Supreme Court, citing Rita, acknowledged that a sentencing judge "has 'greater familiarity with . . . the

individual case and the individual defendant than the [Sentencing] Commission or the appeals

court.   128 S.Ct. at 574.   "He [or she] is, therefore, in a superior position to find facts and judge

their import under 3553(a) in each particular case." Id. citing Gall, 128 S.Ct. at 598.


Justice Scalia explains the role of the sentencing guidelines in the post-Booker era in his

dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after
> considering the recited factors (including the guidelines), has full
> discretion, as full as what he possessed before the Act was passed,
> to sentence anywhere within the statutory range.   If the majority
> thought otherwise, if it thought the Guidelines not only had to be
> considered (as the amputated statute requires) but had generally to
> be followed its opinion would surely say so.

Booker, 543 U.S. at 305-306 (Scalia, J., dissenting in part).     As set forth above, a sentencing

court is not permitted to presume that the Guidelines range is reasonable. Gall, 128 S.Ct. at 596-

597. In fact, a sentencing judge may "disregard" the Guidelines.  Rita, 127 S.Ct. at 2466.   This

notion now gives a sentencing court the discretion to disagree with and reject policy judgments

of the Sentencing Commission and the Guidelines.


Although the Gall decision did not expand on the nature of the required § 3553(a)

consideration, the Third Circuit has expressed what it deems necessary.   The Third Circuit

requires that the record "demonstrate the trial court gave "meaningful consideration" to the

§3553(a) factors." See United States v. Vargas, 477 F.3d 94, 101-102 (3rd Cir. 2006); United

States v. Manzella, 475 F.3d 152 (3rd Cir. 2007); United States v. Parker, 462 F.3d 273, 276 (3rd

Circuit 2006), citing Cooper, 437 F.3d at 329, n3. A district court need not "discuss and make

findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing", however, the record must reflect that the district court considered the § 3553(a) factors and that those factors were "reasonably applied to the circumstances of the case." Id.   A trial court should not sway from imposing its independent judgment in such considerations and great deference is given to the trial court "because it is in the best position to tailor a sentence to a particular defendant and his offense." Vargas, 477 F.3d at 101 citing Cooper at 329-332; see also Jackson, 467 F.3d at 841; United States v. Lloyd, 469 F.3d 319, 323 (3rd Cir. 2006); United States v. Dragon, 471 F.3d 501 (3rd Cir. 2006).

"Meaningful consideration" includes addressing the arguments of the parties which have legal merit and correctly calculating the appropriate guideline range. Cooper, 437 F.3d at 329. A sentencing court "need not discuss every argument made by a litigant if an argument is clearly without merit." Cooper, 437 F.3d at 329.   "Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing. Cooper, 437 F.3d at 329.  A sentencing court must, however, address a defendant's colorable arguments concerning specific facts germane to this third step analysis.   United States v. Sevilla, 541 F.3d 226, 232 (3rd Cir. 2008).

Additionally, "a rote statement of the §3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. The Third Circuit has explained that, in reviewing a district court's sentence, "we have to satisfy

ourselves, before we can conclude that the judge did not abuse his [or her] discretion, that he [or she] exercised his [or her] discretion, that is, that he [or she] considered the factors relevant to that exercise." <u>Cooper</u>, 437 F.3d at 329.

Moreover, after consideration of the relevant factors, a sentencing court can vary (i.e., a "variance") from the advisory guidelines range.   <u>Gunter</u>, 462 F.3d at 247, n. 10.    In <u>Gall</u>, the Court's decision categorically rejected an "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guideline range". 128 S.Ct. at 595; see also <u>Levinson</u>, 543 F.3d at 196.    Rather than requiring extraordinary circumstances to justify a deviation from the guidelines, the Court explained that a district judge must explain his or her reasons for a variance in a particular case with sufficient justifications.    <u>Id</u>.    As set forth in <u>Levinson</u>:

> While the Guidelines are no longer mandatory, <u>United States v. Booker</u>, 543 U.S. 220, 245 (2005), and no "extraordinary circumstances" are needed to justify a sentence that varies from the recommended results, <u>Gall</u>, 128 S.Ct. at 595, and while there is no mathematical formula for determining whether a district court's justifications for a variance are sufficient, <u>id</u>. at 594-95, we nonetheless must be satisfied that, broadly speaking, an adequate justification is provided on the record.

543 F.3d at 196.    As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, a reviewing court must affirm. <u>United States v. Jones</u>,   566 F.3d 353, 366 (3rd Cir. 2009) citing <u>Wise</u>, 515 F.3d at 218.  Where a district court decides to vary from the Guidelines' recommendations, an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify

the extent of the variance." Tomko, 563 F.3d at 56, citing Gall, 128 S.Ct. at 597.

According to Gall, Booker and its related Third Circuit authority, in determining the minimally sufficient sentence, sentencing courts are required to consider the following 18 U.S.C. §3553(a) factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed –
    (A) To reflect the seriousness of the offense, to promote respect for the law, and to
       provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical
care,        or other correctional treatment in the most effective mannter;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant
      as set forth in the guidelines –
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title
          28, United States Code, subject to any amendments made to such guidelines
          by act of Congress (regardless of whether such amendments have yet to be
          incorporated by the Sentencing Commission into amendments issued under
          section 944(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the
          defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines
      or policy statements issued by the Sentencing Commission pursuant to section
      994(a)(3) of title 28, United States code, taking into account any amendments made
      to such guidelines or policy statements by act of Congress (regardless of whether
      such amendments have yet to be incorporated by the Sentencing Commission into
      amendments issued under section 994(p) of title 28);

5) any pertinent policy statement—
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28,
United States    Code, subject to any amendments made to such policy statement by act
of    Congress (regardless of whether such amendments have yet to be
incorporated by the    Sentencing commission into amendments issued  under diction
994(p) of title 28);    and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is
      sentenced.

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2", as set forth above.    This directive, commonly called "sentencing parsimony" is defined as the least restrictive sentence necessary to achieve the purposes of sentencing.  United States v. Dragon, 471 F.3d 501, 503 (3rd Cir. 2006);  See also Kimbrough, 128 S.Ct. at 575-576 (a district court's judgment that a particular defendant's sentence was sufficient but not greater than necessary is entitled to great weight, even if the district court's judgment is based in part of its disagreement with the policies behind an applicable guideline).  Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added); see also United States v. Manzella, 475 F.3d 152 (3rd Cir. 2007) (It is the policy of the United States Congress, clearly expressed in law, that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation. Instead, that legitimate goal of sentencing is to be accomplished through other authorized forms of punishment).

"[S]entencing courts have historically been afforded wide latitude in considering a defendant's background at sentencing". United States v. Berry, 553 F.3d 273, 279 (3rd cir. 2009)

13

citing United States v. Paulino, 996 F.2d 1541, 1547 (3rd Cir. 1993).  Under 18 U.S.C. §3661,

"*no limitation* shall be placed on the information concerning the background, character, and

conduct of [the defendant] which a court of the United States may receive and consider for the

purpose of imposing an appropriate sentence" (emphasis added).  As a practical matter, this

statutory language trumps the now-advisory policy statements in Part H of the sentencing

guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the

defendant's age, educational and vocational skills, mental and emotional conditions, drug or

alcohol dependence, and lack of guidance as a youth and virtually any other facts that fits within

the ambit of §3553(a).    See U.S.S.G. §5H1.  See also United States v. Nellum, 2005 U.S. Dist.

LEXIS 1568, (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who

was 57 at sentencing, would upon his release from prison have a very low likelihood of

recidivism since recidivism reduces with age); United States v. Naylor, 359 F. Supp. 2d 521

(W.D. Va. 2005)(concluding that sentence below career offender guideline range was reasonable

in part because of defendant's youth when he committed his predicate offenses he was 17 and

noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found

significant differences in moral responsibility for crime between adults and juveniles).  In sum, a

sentencing court now has wide discretion in fact-finding as well as in considering such facts in

the Gall analysis.

## Application of the Gall Analysis to the Facts of this Case

14

Title 18 U.S.C. §§3553(a)(4) and (5) refer the Court to consider the sentencing guidelines in fashioning an appropriate sentence. Likewise, Gall, Booker and Third Circuit jurisprudence acknowledge that a court should consider the guidelines as the starting point as well, as advisory only. Mr. Jones does not dispute that the advisory guideline range in this case is 18-24 months' imprisonment. He does, however, believe that there are facts that exist in this case that, in accordance with §3553(a), warrant a sentence of imprisonment equal to the time he has already served in prison, just under 16 months, as a result of his arrest in this case. It is respectfully submitted that, as set forth more fully below, considering good conduct time and consideration of halfway house eligibility, a sentence in which a defendant actually served 16 months in prison would equate to an imposed sentence well within the advisory guideline range of this case and the facts of this case justify such a sentence.

The general circumstances of the instant offense are set forth in the Presentence Investigation Report and this Court has the benefit of that information. There is, however, no limitation on the information which this Court can consider in fashioning an appropriate sentence. See 18 U.S.C. §3661; 18 U.S.C. §§3553(a)(1). While he does not wish to minimize the offense conduct and he accepts responsibility for his actions, Mr. Jones believes that there are certain facts about the circumstances of the offense of conviction that warrant a sentence of time-served.

Mr. Jones certainly does not dispute that he sold guns without a license. Mr. Jones considered himself a collector of firearms (as well as many other types of military equipment)

15

and, on occasion, he would sell firearms to others.  All of his firearms were obtained legally.   He did not target any particular type of purchaser and he did not solicit the sale of firearms. He did not intend to facilitate the illegal trafficking of firearms by intentionally placing firearms in the hands of prohibited persons for the purpose of putting such firearms "on the street".[1]   Instead, those who purchased firearms from him were usually introduced to him by friends or acquaintances.   Although he did not perform computer "insta-checks" on the purchasers, Mr. Jones attempted to assure himself that the purchaser was permitted to possess the firearms at the time of purchase by taking the purchaser at his word. In the government's surveillance tapes, Mr. Jones can be heard asking prospective undercover purchasers if they were permitted to possess the purchased weapon and he is heard advising the undercover agents that his intentions are to ensure that only legal possessors purchase his firearms.  He did not, however, possess a license to sell those firearms.

Although the Presentence Investigation Report indicates that Mr. Jones was known to sell 39 weapons over time, he was not selling firearms as a way to make a cognizable profit.    When Mr. Jones did sell a firearm, he made a very small profit on the firearms and he can be heard during the undercover surveillance telling the undercover agents that his intent was to charge enough money to enable him to replace the firearm to put back in his collection.  In fact, Mr. Jones is heard on the surveillance tapes indicating that he would not sell certain firearms in his collection. Mr. Jones' primary business was as an automotive mechanic and he had a full service

---

[1] Per the terms of the plea agreement, Mr. Jones does accept responsibility for providing ammunition to a prohibited person.  The circumstances of that incident are set forth in the Presentence Investigation Report and they involved Mr. Jones providing one round of ammunition to another person so that person could help Mr. Jones could shoot the

garage on his property.  The sale of firearms was more of a diversion or hobby.

Additionally, a number of the firearms he sold were handguns which were sold during transactions that occurred in conjunction with licensed gun dealers.  Mr. Jones used licensed gun dealers in order to comply with legal requirements concerning registration.  The transfer of the handguns complied with applicable law.  The sale of the shotguns and/or rifles did not have licensing requirements.

Mr. Jones also requests that the Court consider other facts germane to Mr. Jones, the person.  He has been married to his wife, Donna, for over 37 years and he has two children. He and his wife are very close and she is supportive of him despite his current situation.  He is also very close to his children.  He is a devoted husband and father.  Mr. Jones asks that the Court consider the words of his wife and children as set forth in the letters attached to this memorandum.

Mr. Jones possesses other traits and characteristics which this Court should consider in sentencing him.  Attached to this sentencing memorandum are a number of letters from people who know Mr. Jones on a personal level.   The Court is requested to consider the comments of his siblings, relatives, friends and clergy in making any observations concerning Mr. Jones's character.  Mr. Jones is hopeful that the Court will consider the input of these many people and consider that Mr. Jones is a devoted and involved parent and husband, a man of great warmth

---

ammunition for entertainment purposes.

and compassion, a loyal friend counted on by many, and an otherwise honest person.   As set forth in the letters, Mr. Jones is a remarkable person and it is requested that the Court consider his personal traits in arriving at a just sentence.

Mr. Jones also asks the Court to consider that there is virtually no chance that Mr. Jones will ever engage in unlawful conduct again. While Mr. Jones does have a prior record, those offenses were non-violent in nature and involved conduct dealing with fireworks (over 18 years ago) and the improper storage of explosives (over 22 years ago).  He was not imprisoned on the charges and one of the offenses was a summary offense.   Post-Booker courts have noted that recidivism is markedly lower for older defendants.   United States v. Luciana, 379 F.Supp. 288 (E.D.N.Y. 2005).    Defendants "over the age of forty…exhibit markedly lower rates of recidivism in comparison to younger defendants."   See, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at p.28 (2004), www.ussc.gov/publicat/Recidivism_General.pdf. (stating that for those defendant in Criminal History Category I, the recidivism rate for defendants who are over 50 is 6.2%, whereas the recidivism rate for such defendants between the ages of 41 and 50 is 6.9%, and for those defendants who are between ages 21 and 40, it is between 12% and 22%).   The words of his supporters bolster the conclusion that the chance of recidivism is remote.   Moreover, the publicity from his guilty plea has caused Mr. Jones great humiliation and embarrassment among his family, friends, business colleagues and other peers.   This informal form of punishment has been real and severe.

As set forth above, protecting the public from further crimes of Mr. Jones, deterrence or

providing Mr. Jones with needed educational or vocational training, medical care or other correctional treatment while legitimate considerations, are not issues which warrant a further custodial sentence in this case.   See 18 U.S.C. §§3553(a)(2)(B), (C) and (D).      Vocational training, medical care and educational training in a custodial setting are unnecessary.    While deterrence is a bone fide goal of sentencing, under the circumstances of this case, that consideration alone, when taken in conjunction with the other facts recited herein, does not compel a sentence of further imprisonment.   Mr. Jones has served approximately 16 months in prison already.   This is a substantial term of imprisonment and it is a sufficient symbol of deterrence. According to 18 U.S.C. §3582, in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."   Based on Mr. Jones's past history and the lack of any history of violence or danger to others, Mr. Jones does not pose a danger to society, and further imprisonment will not serve the interest of either protection of the public, specific deterrence, or rehabilitation.   A sentence of time-served will achieve all of these goals.

An additional concern of the federal statutory scheme is the need to avoid unwarranted sentencing disparities among defendants with similar criminal histories who have been convicted of similar conduct.   18 U.S.C. §3553(a)(6).  In this case, the facts of this case are unique to Mr. Jones and it does not appear that there is any risk of a sentencing disparity between other defendants.

An additional concern of the federal statutory scheme is the need to provide restitution to any victims of the offense of conviction.   18 U.S.C. §3553(a)(7).  Restitution is not an issue in this case.

By statute, a court must consider the kinds of sentences available in this case. 18 U.S.C. §3553(a)(5).  This Court has a variety of sentencing options available to it.  However, there is no mandatory term of imprisonment applicable in this case.   This Court could sentence Mr. Jones to any term of imprisonment between probation and the statutory maximum of five years' imprisonment.   For the reasons set forth above, it is respectfully requested that the Court sentence Mr. Jones to a term of imprisonment of time served.   A sentence of almost 16 months' in prison is a substantial restriction on Mr. Jones' liberty and it is consistent with the mandate of 18 U.S.C. §3553(a).    Specifically, if this Court were sentence Mr. Jones to a term of imprisonment of 18 months' at the low end of the advisory guideline range, Mr. Jones would receive Good Time Credit of 70 days (assuming he did not forfeit any).  He would also likely be eligible for up to 1.8 months of prerelease halfway house.  Essentially, on an imposed sentence of 18 months' imprisonment, Mr. Jones would likely actually serve approximately 14 months in prison.     Therefore, a sentence in the low end of the advisory guideline range would result in Mr. Jones serving less time in prison than he's already served.   A sentence in the mid-range of the advisory guideline range would result in Mr. Jones serving approximately the same amount of imprisonment that he will have served as of the date of sentencing.  As a result, a sentence of time served is consistent with the advisory guideline range.

All that is required is that a Court give meaningful consideration to the §3553(a) factors and that those factors were "reasonably applied to the circumstances of the case." <u>Cooper</u>, 437 F.3d at 329. It is respectfully requested that the Court consider the comments herein and invoke its discretion and impose a sentence of time served in this case.

Respectfully submitted,

<u> s/ Martin A. Dietz     </u>
Martin A. Dietz, Esquire
Pa. I.D. No. 69182

36th Floor, Grant Building
Pittsburgh, PA  15219
(412) 261-5520

Attorney for Morgan Jones